STATE OF IOWA, Appellee, v. WILLIAM COBLEY, Appellant.

**Murder:** AIDING AND ABETTING: EVIDENCE. The evidence is re-
1  viewed and· held sufficient to justify a special finding that the defendant aided and abetted in the commission of the crime, and to support·a general verdict of manslaughter.

**Criminating evidence:** PRIVILEGE. Where a witness on his own
2  behalf objected tó testifying on the ground that his answers might tend to criminate himself, the defendant could not complain ·of an overruling of the objection, as the privilege was personal to the witness.

**Evidence by one jointly accused.** The fact that a witness for
3  the state was under indictment for the identical crime for which the defendant was on trial, did not render him incompetent to testify against defendant concerning the circumstances of the crime.

**Appointment of assistant prosecutor:** PREJUDICE. The appoint-
4  ment by the court of an assistant prosecutor after the jury had been empaneled was not error, where it was not shown that prejudice resulted to the defendant, in that he would have exercised his right of peremptory challenge differently had he known of the appointment.

*Appeal from Monroe District Court.*— HON. ROBERT SLOAN, Judge.

WEDNESDAY, APRIL 5, 1905.

THE defendant was indicted for the crime of murder. The jury found him guilty of manslaughter, and from the judgment entered on the verdict he appeals.— *Affirmed.*

*Tom. H. Milner* and *N. E. Kendall,* for appellant.

*Chas. W. Mullan,* Attorney-General, and *Lawrence De Graff,* Assistant Attorney-General, for the State.

BISHOP, J.— I.   Upon the case being called for trial in the district court, there appeared for the State F. D. Everett, Esq., county attorney.   After the jury had been impaneled and sworn, and after the taking of evidence for the State had begun, the county attorney moved the court for the appointment of J. C. Mabry, Esq., to assist him in the prosecution of the case.   The defendant interposed an objection, which was overruled.   An appointment was made as requested, and Mr. Mabry thereafter took part in the trial.   Based on such proceeding, the defendant contends for error.   The precise point as stated in the objection made was that the jury had been impaneled without knowledge that Mr. Mabry was to have part in the trial, and therefore were not examined, challenged, or accepted with reference to his appearance in the case.   It is not claimed that the appearance of Mr. Mabry at the beginning of the trial would have constituted a ground for challenge as for cause. The contention has relation solely to the right of defendant to exercise peremptory challenges.   The subject is again referred to in the motion for new trial, the statement made being simply that the court erred in permitting the appearance of Mr. Mabry after the jury had been impaneled and sworn.   By statute a county attorney is authorized — subject to the approval of the court — to procure assistance in the trial of a person charged with a felony.   Code Supp. 1902, section 303a; *State v. Tyler,* 122 Iowa, 125.

*4. APPOINTMENT OF ASSISTANT PROSECUTOR: prejudice.*

There is nothing in the statute prescribing the time within which, or the stage of the trial preceding which, the county attorney must exercise the right given him. Nor do we think such a requirement can be said to exist in abstract reason. Quite to the contrary, it may happen, and, for that matter, does frequently happen, that some matter of necessity arises during the trial of a criminal case which requires the appearance of an assistant attorney to prevent the annoyance, hazard, and expense incident to a discharge of the jury, and a new trial, or perhaps an entire failure of justice. It is not within reason to say that, upon the mere happening of such an emergency, prejudice to the defendant may be presumed from the making of an appointment. It is true that in such cases a defendant, if advised in advance, might have differently exercised his peremptory challenges, but it is for him to make this appear to the court. It is for him to show prejudice where prejudice may not be presumed. Thus, had he pointed out, in making his objection, or in his motion for new trial, that the relation between some one of the jurors and the attorney appearing was such that, in his (defendant's) discretion, the juror would have been excused on peremptory challenge, the court might well refuse to make the appointment in the first instance, or possibly should grant a new trial after verdict. And an abuse of discretion on the part of the court might be taken by us as reversible error. Accepting such to be a proper view, it is manifest to our minds that a new trial should not be granted because of the chance or possibility, unsupported by even a bare assertion, that defendant might have desired to exercise a challenge, had the opportunity been given him. There is nothing in the cases cited by counsel for appellant which conflicts with the conclusion thus expressed.

II. One Fuller was called as a witness by the State, and during the course of his examination it was made to appear that he was present at or about the time of the

homicide. Such witness then objected to being further examined on the ground that he had been separately indicted for the homicide in question, and that his case was then pending after the conviction on appeal, and that his answers might tend to his own incrimination. The privilege was not allowed, and the examination of the witness continued. Of this the appellant complains as error. There is no force in the contention. The privilege, if such there was, was that of the witness. The defendant could not have raised the matter of privilege; nor can he complain of the ruling thereon, the matter having been raised by the witness. *State v. Van Winkle,* 80 Iowa, 15.

2. CRIMINATING EVIDENCE: privilege.

III. The indictment charged the defendant with the murder of one Roe. Over the objection of defendant, the witness Fuller was permitted to detail the circumstances of the homicide. Of this, appellant complains, and the ground thereof is that the witness was rendered incompetent by reason of the fact appearing that he (said witness) was then under indictment for the identical homicide concerning which defendant was accused, and for which he was being tried. In support of their contention, counsel cite and rely upon *State v. Westfall,* 49 Iowa, 328. That case goes no farther than to hold that the declarations made after the act by one of two persons jointly indicted, and made to a third person, are not competent evidence as against a co-defendant on trial for the commission of such act. The case is not, therefore, in point. We know of no authority, nor do we think there is any reason for saying, that one of two persons separately charged with the commission of a crime, identical as to each, may not be called as a witness upon the trial of the other. The question, if such there be, is one of privilege of the witness, and, as we have seen, that is personal to himself.

3. EVIDENCE BY ONE JOINTLY ACCUSED.

IV. Roe, the person killed, came to his death by

a blow on the head from some blunt instrument. The affray leading up to the tragedy occurred on a street in Hocking, and at about 11 o'clock p. m. It seems to be certain that the fatal blow was struck either by Fuller or by the defendant — which one of the two is a subject of dispute, as presented by the evidence. At the close of the testimony the defendant requested the court to submit to the jury two special interrogatories as follows: " (1)  Do you find beyond a reasonable doubt that the defendant struck the blow which caused the death of Roe?  (2)  Do you find beyond a reasonable doubt that the defendant aided and abetted W. H. Fuller in the assault upon Roe which resulted in the death of said Roe?"  The request so made was granted. Further, and in connection with the general charge, the jury was instructed as follows: " (21)  If you are satisfied  .  .  .  that said Roe was assaulted and struck upon the head with a dangerous and deadly weapon, and mortally wounded thereby, and died,  .  .  .  and that the person who inflicted such mortal wound is guilty of the crime of either murder  .  .  .  or manslaughter, and if  .  .  .  this defendant was present, aiding and abetting in the commission of the offense, then this would render him liable therefor, even if he did not himself strike the fatal blow," etc.  " (22)  There is no evidence to show that the conflict in which Roe was mortally wounded was brought about through any previous concert of action between Fuller and Cobley, and hence, in order to constitute aiding and abetting, the defendant must have participated in the attack upon Roe, either by encouraging the same, or by assisting the person who was engaged in the conflict, or in some way aiding him therein."  The general verdict was guilty of manslaughter. The first special interrogatory was answered by the jury in the negative, and the second in the affirmative.

The contention of defendant made in the court below

1. MURDER: aiding and abetting; evidence.

upon motion in arrest and for new trial, and again presented in this court, is that the court erred in giving the instructions quoted by us above, for the reason that there was no evidence produced upon the trial tending to prove that the defendant in any way aided or abetted in the commission of the crime charged. And for the same reason, it is said there was no warrant for the answer as given by the jury to the second special interrogatory, and, as the first interrogatory had been answered in the negative, the general verdict should have been set aside. These contentions we may dispose of together. In view of the request for the special interrogatories, it may be doubted whether defendant is in position to question the propriety of the instructions complained of. But our conclusion on the merits makes it unnecessary to consider such question. At the time of the affray there were present Roe, Fuller, one Campbell, the defendant, and two or three other persons. All had been drinking intoxicating liquor in a near-by saloon, and, after such saloon had been shut up for the night, they loitered in the vicinity. At about 11 o'clock the proprietor of the saloon opened the door and generously passed out a pail of beer. The evidence tends to show that Fuller and the defendant were not immediately present at the moment, and the pail was received by Roe, Campbell, and the others. Soon Fuller and the defendant came up, and some controversy arose as to who was entitled to share in the contents of the pail. As a result, defendant and one of the others walked away a little distance and sat down. A son of the saloon keeper testified that he came out of the saloon building and went over to where defendant sat, and that to him defendant said that he was going to lick some of those who had the beer because they would not let him have any. The witness further testifies that defendant at the time had a club in his hand, which he stuck under his coat. This is followed by evidence tending to prove that immediately thereafter

the defendant and Fuller came up where the others were, and soon there was a struggle on for the possession of the pail of beer, in which defendant and Fuller were acting together as against the others; that during the struggle some of the beer flew into the face of Fuller, whereupon he either turned or reached behind him and produced a club with which he struck the blow that resulted in the death of Roe. The club was produced and identified upon the trial, and the witness who saw a club in the possession of defendant immediately before the affray testified that such club was similar to the one thus exhibited on the trial. Foregoing is a brief summary, or, rather, outline, of the evidence. Therefrom a finding was warranted, as we think, to the effect that defendant, when he rejoined Fuller to go where Roe and the others were standing with the pail of beer in their possession, carried with him a club which he had secreted in his clothes, and that when the struggle began he passed such club to Fuller, and this with the intent that the same should be used, and which was used, in beating off the others, who were trying by force to retain possession of the pail. This being true, it follows not only that the instructions given were appropriate, but that the jury was warranted in respect to its answer to the second interrogatory.

Some other questions are made in argument. We have carefully examined the record as to each, and find no error.

On the whole case, we think the defendant was rightly convicted, and the judgment is *affirmed*.