COMMONWEALTH *vs.* SAMUEL GRANITO.

Suffolk.   October 2, 1950. — November 30, 1950.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Evidence,* On cross-examination, Competency, Privilege against self incrimination, Contradiction of witness, Of consciousness of guilt, On motion for new trial. *Practice, Criminal,* Discretionary control of evidence; Exceptions: whether error shown; Colloquy of judge with counsel; New trial. *Error,* Whether error shown. *Witness,* Cross-examination, Privilege against self incrimination, Contradiction. *Jury and Jurors.*

No abuse of discretion nor error appeared at the trial of an indictment in the exclusion of questions asked by the defendant in cross-examination of a police officer as to the subject matter of his talks at police headquarters concerning the crime and as to the names of officers with whom he talked.

The exclusion of questions asked by the defendant on direct examination of a witness at the trial of an indictment was not shown to be error where there was no offer of proof or anything else in the record demonstrating the materiality of the questions.

Prejudice to the defendant was not shown by the record of the trial of an indictment, including certain instructions given to the jury at his request, through the facts that the judge permitted the district attorney to ask a witness called by the Commonwealth a series of questions concerning the witness's association and conversations with the defendant at about the time of the crime, and that the witness refused to answer such questions on the ground that answering them would tend to incriminate him.

After the defendant at the trial of an indictment had sought to establish an alibi by his testimony in detail as to his whereabouts and doings at and about the time of the crime, it was proper to allow cross-examination of him to show that, upon being questioned as to such matters only a few days after the crime, he had replied that he did not know.

In connection with proper cross-examination of the defendant at the trial of an indictment concerning questions put to and answers made by him during an interrogation by police officers and an assistant district attorney previous to the trial, the Commonwealth was entitled to introduce such questions and answers in evidence through a stenographer who had recorded them, notwithstanding that the defendant had testified that he did not remember being asked the questions or giving the answers.

At the trial of an indictment, certain answers given by the defendant during an interrogation before the trial were admissible in evidence on the ground that they could be found to have been evasive or false and tended to show consciousness of guilt.

Prejudice to the defendant at the trial of an indictment was not shown by certain remarks made by the judge in a colloquy with counsel and alleged by the defendant to have been comments on his credibility as a witness, where such remarks, taken in their context, were no more than restatements of arguments of the district attorney respecting the admissibility of evidence and the judge in his charge, referring to colloquies with counsel, specifically instructed the jury that the determination of facts was solely their function.

The record respecting a motion for a new trial of an indictment on the ground that deafness of one of the jurors had prevented his hearing the evidence at the trial disclosed no abuse of discretion in a refusal of the judge to designate an otologist to examine the juror.

No error was shown in a refusal of a judge to receive oral testimony besides affidavits in support of a motion for a new trial of an indictment.

INDICTMENT, found and returned on January 8, 1948.

The case was tried in the Superior Court before *Forte*, J.

*P. T. Smith*, (*H. F. Callahan & R. J. DeGiacomo* with him,) for the defendant.

*F. T. Doyle*, Assistant District Attorney, for the Commonwealth.

SPALDING, J. Shortly after eight o'clock on the morning of October 30, 1947, approximately $112,000 was delivered by armored express to the B. F. Sturtevant Division of the Westinghouse Electric Company in Hyde Park for its pay roll. Soon after the express truck had departed, six armed robbers entered the building where the money had been delivered, cowed the personnel in charge, and made off with approximately $110,000. On November 8, nine days later, the defendant was arrested in New York and was questioned about the robbery by New York police officers and an assistant district attorney. Subsequently he was charged with participation in the crime in an indictment accusing him of robbery while armed with a dangerous weapon. At the trial of the case, which was ordered to be tried subject to the provisions of G. L. (Ter. Ed.) c. 278, §§ 33A–33G, as amended, the defendant was found guilty. The identification of the defendant as one of the robbers and an alibi were

the principal issues at the trial. The sole identifying witness for the Commonwealth was one Marshall, the paymaster at the Sturtevant plant. The defendant's appeal comes here with numerous assignments of error relating to rulings made at the trial and in connection with a motion for a new trial.

1. Assignments 2 and 3 relate to rulings excluding questions put to one Tuohey, a captain in the Boston police department. Captain Tuohey was asked by the defendant on cross-examination whether the subject matter of his talks at police headquarters concerning the robbery had to do with a description of any of the alleged robbers, and he was also asked to give the names of the officers with whom he talked. The exclusion of these questions reveals no error. "How far the cross-examination of a witness may be relevant to the issue on trial must be left largely to the sound discretion of the court; such questions are not open to revision unless substantial rights of a party are clearly shown to have been prejudiced." *Commonwealth* v. *Corcoran*, 252 Mass. 465, 486. See *Commonwealth* v. *Kaplan*, 238 Mass. 250, 255.

2. The questions raised by assignments 8 to 14, inclusive, are closely related and will be dealt with together. They arose in these circumstances. One Crowley, a Boston police officer called by the defendant, had testified that he was present at the lineup at police headquarters involving the defendant. He was then asked the date of the lineup, whether a number of persons were called in to look at the lineup, and the names of such persons. These questions were excluded and form the basis of assignments 8 to 10, inclusive. Assignments 11 and 12 relate to the exclusion of questions put by the defendant on direct examination to witnesses Skinner and Morse, employees at the Sturtevant plant. Each was asked whether he had attended a lineup at police headquarters. The thirteenth and fourteenth assignments arise out of the exclusion of questions put by the defendant on direct examination to one Gallahue, a Boston police officer. Gallahue was asked whether he had

brought with him some records in response to a summons to the superintendent of police, and whether these included a record of the description of the alleged bandits.

The defendant contends that he was prejudiced by the exclusion of this evidence because it deprived him of information necessary for the preparation of his defence. It is to be noted that in excepting to these rulings the defendant made no offer of proof, except with respect to the question which asked for the date of the lineup. Even if the defendant did not know the answers to the questions put he should at least have got something into the record which would reveal their possible materiality. The defendant has failed to show that he was prejudiced by these rulings. *Smethurst* v. *Barton Square Independent Congregational Church,* 148 Mass. 261, 267. *Commonwealth* v. *Pelletier,* 264 Mass. 221, 225. *Commonwealth* v. *Farrell,* 322 Mass. 606, 623. Whether some of the rulings might also be sustained on the ground that the questions would reveal the identity of informers need not be decided. See *Worthington* v. *Scribner,* 109 Mass. 487, 488–489.

3. Assignments 4 to 7, inclusive, relate to the overruling of the defendant's objections to a series of questions asked of the witness Putterman. Putterman was called by the Commonwealth and answered questions concerning his name, address, age, and occupation. Thereafter, with one exception, he refused to answer numerous questions on the ground that the answers would tend to incriminate him. Those questions were designed to elicit information as to whether Putterman knew the defendant; whether he had talked with the defendant in New York four or five weeks prior to the robbery about the latter's coming to Boston; whether he had on occasions given the defendant money to go to Boston; whether he had met the defendant prior to October 31, 1947; whether he had a telephone conversation with the defendant on October 31, 1947, in reference to the robbery; whether he met the defendant in a New York hotel on October 31, 1947, and received $200 from him;

whether on October 31 the defendant asked the witness to "change small bills into large bills"; whether the defendant had told the witness that he had been connected with a $100,000 robbery at the Sturtevant plant; whether he had given a statement to the district attorney in New York relative to his conversation in New York; and whether the defendant had told him that he and his accomplices had stolen a black automobile and had used it in making their get-away from the scene of the robbery. It appears that the prosecution asked some thirteen questions in this vein before the defendant took any exceptions.[1] At no time did the court compel the witness to answer any question as to which the claim of privilege was made.

The defendant contends that the asking of these questions was prejudicial because it created the inference that affirmative answers had been given on a prior occasion and the inference of "guilty knowledge of the defendant by the witness by his refusal to answer the questions on the grounds of self-incrimination." Of course, if questions of this sort were put in bad faith and without foundation, they would be highly improper, and very unfair to the defendant. But we cannot assume on this record that there was no basis for them. The questions were not in themselves improper. To be sure many of them were leading, but no objection was made on that ground, and in the circumstances they could hardly have been otherwise. See *Commonwealth* v. *Jones*, 319 Mass. 228, 230. Until the witness claimed the privilege it could not be known that they would not be

---

[1] The questions to which exceptions were taken were as follows:

"Did you give a statement to District Attorney William P. Sirignano of New York County, relative to your conversation with the defendant Granito, said statement given November 9, 1947?"

"Did you have a conversation with the defendant Granito in the President Hotel, New York City, October 31, 1947, wherein other names other than his own were used as being connected with the payroll robbery of the B. F. Sturtevant plant?"

"Did the defendant Granito tell you in any conversation you had with him in New York City in October of 1947 that they had stolen a big black car to be used for a get-away from the robbery?"

"Did the defendant Granito tell you in a conversation you had with him in October of 1947, that they sped away from the payroll robbery in a black car and changed into a truck?"

answered. The possibility that the witness may claim the privilege does not prohibit the asking of the question. Wigmore, Evidence (3d ed.) § 2268. *Cutter* v. *Cooper*, 234 Mass. 307, 318. The fact that evidence was not introduced to show that Putterman had made the statements as to which he was interrogated does not necessarily indicate that the questions were put in bad faith. As stated above, the privilege was claimed to all questions put, with one exception, and in these circumstances there was virtually no basis for showing prior statements under G. L. (Ter. Ed.) c. 233, § 23. *Commonwealth* v. *Chin Kee*, 283 Mass. 248, 261.

The defendant asked the judge to instruct the jury that the fact that Putterman had claimed his privilege with respect to any question was not to be considered by them to the prejudice of the defendant. This request was granted. The judge told the jury that the questions were not evidence, that the fact that the witness claimed the privilege should not be used against the defendant, and that all of the testimony of Putterman should be disregarded. We think that in the circumstances the rights of the defendant were adequately protected. See *Commonwealth* v. *Bellino*, 320 Mass. 635, 645.

4. The defendant took the stand and testified that he was elsewhere at the time of the robbery, giving a detailed account of his whereabouts and doings at the time of the robbery and during the periods immediately preceding and following it. This testimony was corroborated by numerous witnesses. Assignments of error 15 to 26, inclusive, relate to the overruling of the defendant's objections to questions put to him on cross-examination concerning his interrogation by police officers and an assistant district attorney during his detention in New York on November 8 and 9. He was asked whether during that questioning, when inquiry was made as to his whereabouts on October 30 (the day of the robbery), his reply was that he did not know and could not say. Assignments 28 to 38, inclusive, are based on other questions permitted on cross-examination relating to the New York interrogation. These questions were designed to

show that the defendant was there asked numerous questions concerning his activities at or near the time of the robbery and the names of persons with whom he associated at that time, and that his replies were that he did not know. As to some of the questions put to him touching the New York interrogation the defendant replied that he did not remember whether or not they had been asked.

There was no error in permitting this cross-examination. The defendant at the trial testified in great detail as to his whereabouts and doings at or near the time of the robbery. It was open to the prosecution to show that at the time of his arrest, nine days after the robbery, the defendant's reply to questions bearing on these matters was that he did not know. These replies were admissible to discredit the detailed alibi testified to at the trial. *Langan* v. *Pianowski*, 307 Mass. 149, 151. *Commonwealth* v. *West*, 312 Mass. 438, 440. And the fact that the defendant testified in several instances that he did not remember being asked such questions or giving such answers did not deprive the Commonwealth of the right to put them in evidence. This was cross-examination. A "party has the right to contradict a witness called by his opponent not only by statements categorically opposed to his testimony but also by statements the implications of which 'tend in a different direction from what is sworn to.'" *Langan* v. *Pianowski*, 307 Mass. 149, 151–152. Compare *Corsick* v. *Boston Elevated Railway*, 218 Mass. 144. Moreover, some of the answers of the defendant to the questions put to him in New York could be found to be evasive or false and tended to show consciousness of guilt. *Commonwealth* v. *Devaney*, 182 Mass. 33, 35–36. *Commonwealth* v. *Anderson*, 220 Mass. 142, 146. *Commonwealth* v. *Sokorelis*, 254 Mass. 454, 457.

Not only did the Commonwealth have the right to cross-examine with respect to the questioning but it could, as it did, introduce the questions and answers through the stenographer who recorded them. The defendant's thirty-ninth assignment of error, therefore, is without merit.

5. The twenty-seventh assignment of error arises from

some remarks made by the judge in a colloquy over the admissibility of evidence during the cross-examination of the defendant. Taken out of their context some of the statements might give the impression that the judge was commenting on the credibility of the defendant, but on closer scrutiny they appear to be only restatements of the arguments of the district attorney on the question of laying a foundation for the introduction of prior inconsistent statements. At four points during this colloquy, which comprises several pages of the record, the judge specifically stated that he was only restating the arguments of counsel on the admissibility of this evidence. In his charge the judge was careful to point out that it was not the function of the court to determine questions relating to the credibility of witnesses. Continuing he said, "I make that statement so that if anything that transpired during this trial, in any colloquy with counsel, you felt that you received the slightest hint as to what the court thought of the issues in this case so far as the facts are concerned, you should completely disregard it, because the function . . . power and authority of ascertaining the facts is exclusively yours." We are of opinion that the rights of the defendant were not prejudiced by anything that transpired during the colloquy.

6. Assignments of error 40 to 43, inclusive, stem from rulings made in connection with the defendant's motion for a new trial. Numerous grounds were set forth in the motion, but we are concerned here with only one of them, namely, newly discovered evidence to the effect that one of the jurors, Coulson, was so deaf that he could not hear what was said during the trial. In support of this ground affidavits of the defendant, his counsel, and a private detective were filed by the defendant. There were counter affidavits by Coulson and two police officers.

The fortieth assignment asserts that the judge erred in refusing to adopt the defendant's suggestion that he designate, at the defendant's expense, an otologist to examine Coulson with respect to his hearing and to report to the court as to

his capacity to hear during the trial. This motion was addressed to the discretion of the judge, and we cannot say that on this record there was any abuse of discretion. At the time the motion was made the judge had before him an affidavit of Coulson which stated unequivocally that he had heard all that was said during the trial.

The defendant argues that the judge erred in excluding questions put to certain of the jurors concerning the acts and statements of Coulson outside of the court room which indicated that he was hard of hearing [1] (assignments 41, 42, and 43). Most of the evidence sought to be elicited by these questions was merely cumulative of that contained in affidavits which were before the judge. See *Commonwealth* v. *Rudnick*, 318 Mass. 45, 61. Moreover, "A party has no right to insist that oral evidence be heard upon a motion [for new trial]. He may be required to present the evidence upon affidavits alone." *Commonwealth* v. *Millen*, 290 Mass. 406, 410. "In accordance with the practice in this Commonwealth motions for new trial in both civil and criminal cases ordinarily are heard on the facts as presented by affidavit." *Commonwealth* v. *Coggins*, 324 Mass. 552, 557. The defendant had the benefit of the affidavits filed in connection with his motion. In his decision denying the motion for new trial the judge stated that he considered the affidavits filed on this issue and evidence [2] introduced at the hearing by the defendant "as well as . . . [his] own observation of the trial." He then went on to find that Coulson was a proper person to serve on the jury, that he heard what went on at the trial, and that the defendant had failed to sustain the burden of proving the contrary. The defendant, of course, was entitled to be tried by twelve competent jurors,

[1] These questions, which were accompanied by offers of proof, were for the purpose of proving that the jurors inquired of had heard Coulson say in the jury room that he was hard of hearing and had not heard the evidence; that his defective hearing was the subject of discussion among the jurors; and that he had asked other jurors from time to time in the jury room what certain witnesses had testified to that day.

[2] This consisted of the testimony of several court officers in attendance at the trial to the effect that they observed nothing about Coulson that would indicate that his hearing was impaired.

and the findings of the judge were to the effect that he was not deprived of that right. That was a question of fact. *Commonwealth* v. *Best,* 181 Mass. 545. Whether the action of the judge in excluding the evidence discussed above can also be supported on the ground that its admission would violate the rule that the testimony of jurors cannot be received to impeach or stultify their verdict is a question we need not decide. See *Murdock* v. *Sumner,* 22 Pick. 156, 157; *Cook* v. *Castner,* 9 Cush. 266, 278; *Woodward* v. *Leavitt,* 107 Mass. 453; *Simmons* v. *Fish,* 210 Mass. 563, 571; *Dixon* v. *A. J. Cunningham Co.* 257 Mass. 63, 71; *Shears* v. *Metropolitan Transit Authority,* 324 Mass. 358, 361–362. The defendant shows no error with respect to these assignments.

7. Other assignments of error, relied on by the defendant but not discussed in this opinion, have not been overlooked. We find nothing in them that requires discussion.

*Judgment affirmed.*