STATE OF IOWA, appellee, v. DR. J. A. SNYDER, appellant.

## No. 48168.

(Reported in 59 N.W.2d 223)

June 9, 1953.

Rehearing Denied September 25, 1953.

Smedal & Maurer, of Ames, for appellant.

Leo A. Hoegh, Attorney General, R. R. R. Dvorak, Assistant Attorney General, and D. W. Countryman, County Attorney, for appellee.

HAYS, J.—Appeal from a conviction under section 701.1, Code, 1950, which provides as follows: "If any person, with intent to produce the miscarriage of any woman, willfully administer to her any drug or substance whatever, or, with such intent, use any instrument or other means whatever, unless such miscarriage shall be necessary to save her life, he shall be imprisoned ** *."

The instant indictment was returned on November 20, 1951, and was one of sixteen indictments so returned. Each charged the defendant with violation of section 701.1 and is identical except as to dates and women named therein. Each appears to be based entirely upon the testimony of the woman named therein. There was a plea of not guilty in the instant case.

As authorized by section 780.10, Code, 1950, notice of additional testimony was given to the defendant. It contained the names of the fifteen women, involved in the other indictments above-mentioned, and stated that each would testify that the defendant had attempted an abortion upon her by the use of instruments, and that at said time she was in good health. They date back approximately eighteen months prior to July 27, 1951, the date alleged in the instant case. A motion by the defendant to quash the notice or to strike therefrom the names of said women was overruled by the trial court.

On the trial the county attorney in his opening statement to the jury, over defendant's objections, stated that to prove defendant's criminal intent, the State would show there was a group of girls, naming the fifteen above-mentioned, who would testify to abortions committed upon them by the defendant, and related the details thereof. Mary Branco, the prosecutrix, was

then called as a witness and she related in detail what occurred on July 27, 1951, at defendant's home.

Ardis Durnan, one of the women listed in said notice of additional testimony, was then called as a witness. She gave her name and address, objections by the defendant to her being called as a witness having been overruled. At the time she was called an attorney entered his appearance for her and the record shows the following proceedings:

By the county attorney, "Q. Are you acquainted with Dr. J. A. Snyder?"

By her attorney, "I object to that question, your Honor, for the reason that the answer might tend to expose her to public ignominy, public disgrace, tend to incriminate her."

By the court, "In view of the statute, this witness having not appeared nor having anyway waived her right to her statutory immunity, it is not for the court to say to what extent or in what way, and the witness having claimed, through her counsel under immunity, the court will have to respect it and the claimed immunity will have to be sustained."

The witness was then excused. Thereafter, the State called six of the other women, above-mentioned, and approximately the same proceedings were had, except that one of them, not being represented by counsel, claimed her own immunity. While three other witnesses, also named in said notice, appeared and testified to other matters, their testimony was stricken from the record and is not material here. The State then rested its case.

The defendant called one witness who established the fact that he, the defendant, was at the time a duly licensed physician in Iowa and had been since 1910. The defendant then rested his case and the testimony was closed. No question is raised by the defendant as to the sufficiency of the evidence to sustain the verdict.

I. The defendant asserts that the overruling of his motion to strike the names of said women from the notice and his objections to the appearance of the six women on the witness stand was error and created such prejudice against him as to require a reversal of the judgment. Both questions involve the

1248

basic issue as to the admissibility of the proposed testimony and will be considered together.

██ · It is urged that said names should have been stricken, and the objections to their appearance sustained because both the State and the court were advised in advance that said women, if called, would claim immunity and refuse to testify, and that the calling of them constitutes bad faith and was highly prejudicial to the defendant. The record shows that as to most of the said women, if not all, the State and court had been informed that such immunity would be claimed and they would refuse to testify. This, however, does not constitute valid grounds for either the motion or the objections. Immunity is a privilege of the witness only, and may not be urged by the party against whom the witness is offered. State v. Cobley, 128 Iowa 114, 103 N.W. 99; State v. Rowley, 198 Iowa 613, 198 N.W. 37, 199 N.W. 369. The fact that the State was advised in advance that immunity would be claimed is of no consequence. The general rule is, as stated in 58 Am. Jur., Witnesses, section 53, that "although a witness cannot be compelled to give self-incriminating testimony, he must if properly summoned appear and be sworn." His privilege is available only as a witness and cannot be extended so as to excuse him from appearing. If the witness himself cannot escape being sworn by claiming in advance that he will refuse to testify, certainly the defendant, against whom such witness is offered, cannot claim greater rights. See also annotations in 24 L. R. A., N. S., 169 and 6 A. L. R. 1614. There is no merit in this contention.

██ Defendant further contends error, as to said motion and objections, because such proposed testimony is incompetent because it tends to show the commission of other and distinct offenses. Competent evidence is that which the very nature of the thing to be proven requires. Black's Law Dictionary, Third Ed., page 697. The general rule is that, ordinarily, evidence of a crime not charged in the indictment is not admissible. There are, however, certain well-recognized exceptions. The rule, together with the exceptions, is well stated in State v. Vance, 119 Iowa 685, 687, 94 N.W. 204. It is there stated that the State cannot prove against a defendant any crime not alleged in the

indictment, either as a foundation for separate punishment or as aiding the proof that he is guilty of the crime charged, except to show intent, motive, absence of mistake or accident, a common scheme embracing the commission of two or more crimes so closely related to each other that proof of one tends to prove the other, and identify the person charged. See also State v. Clay, 220 Iowa 1191, 264 N.W. 77; State v. Kinkade, 241 Iowa 1259, 43 N.W.2d 736; 22 C. J. S., Criminal Law, section 683. Section 701.1, supra, provides that abortions are illegal *unless* the same is necessary to save the woman's life, thus it is essential that the abortion was not necessary; in other words, to show a criminal intent upon the part of the doer of the act. This burden is upon the State, the rule being that when the offense is grounded on a negative or when the negative is an essential element of the crime, the burden is upon the State to prove it, at least by a prima-facie showing. State v. Aiken, 109 Iowa 643, 80 N.W. 1073; State v. DeMarce, 237 Iowa 648, 23 N.W.2d 441; annotation, 153 A. L. R. 1218, 1266. The State, in the opening statement, said such testimony would be offered to .show the criminal intent of ·the defendant. Intent, being essential, is recognized as being within the exception to the general rule. The proposed evidence was clearly competent.

 It is claimed that said motion and objections should have been sustained, since, under a plea of not guilty, such proposed evidence was not relevant, at least on the State's case in chief. Relevant evidence is, according to Black's Law Dictionary, Third Ed., page 701, such evidence as relates to, or bears directly upon, the point or fact in issue, and proves or has a tendency to prove the proposition alleged. Defendant's theory is that under a plea of not guilty there is no issue of intent raised as the plea goes to the doing of the act, and in the absence of any attempt to justify the act the intent is presumed if the act is established, citing respectable authority therefor. This precise question does not appear to have been previously before this court. There is, however, equally respectable authority which holds against defendant's theory and represents, we think, the majority rule. As before stated, the intent of the defendant is in issue in every case of this type, and in our opinion this is

true irrespective of the defendant's plea or the nature of the evidence offered in his behalf upon the trial of the case. In the 1952 Pocket Parts, Cumulative Supplement to Volume 1 Am. Jur., Abortion, section 42, page 19, it is said:

"Other courts, especially under statutes making criminal intent an essential element of the definition of the crime of abortion, have held that in every case the prosecution is under the burden of proving such intent, and that it is not, therefore, required to reserve such evidence until the issue of intent is specifically raised by the defendant."

In an exhaustive annotation upon this general subject appearing in 15 A. L. R.2d 1080 it is said at pages 1091, 1092:

"A number of courts have held that criminal intent is in every case an essential ingredient of criminal abortion * * *. Under such a view, it has generally been held that the state is under an affirmative duty to prove such intent, and, for this purpose, may introduce evidence of other similar offenses committed by the defendant, *notwithstanding that the accused has relied upon a general denial rather than a plea of justification,* or that there is other evidence available which would justify the jury in finding criminal intent in the absence of proof of other offenses." (Italics ours.)

In The People v. Hobbs, 297 Ill. 399, 410, 130 N.E. 779, 783, such evidence was held proper, the court saying the "defendant could not render this testimony incompetent by interposing a particular defense to the charge. * * * The plea of not guilty puts in issue all material allegations." See also Housman v. State, Tex. Cr. App., 230 S.W.2d 541; The People v. Coltrin, 5 Cal.2d 649, 55 P.2d 1161; Rice v. State, 120 Neb. 641, 234 N.W. 566. The ruling of the trial court was correct.

The State cites State v. Rowley, 197 Iowa 977, 195 N.W. 881. An examination of the record in that case shows that such testimony was rejected upon the State's main case but was permitted on rebuttal, the defendant having admitted examining the woman but claiming it was done for other reasons than abortion. The defendant cites State v. Crofford, 121 Iowa 395,

96 N.W. 889. This was a murder case based upon abortion. Certain letters, written by one who was jointly indicted with the defendant, Crofford, were admitted into evidence and in these letters were references to other abortions committed by Crofford. There was also testimony of one witness as to a conversation with Crofford from which it appears he referred to another abortion. The admissibility of this evidence does not appear to have been assigned as error and is referred to only indirectly. The case was reversed because of error in admitting the letters, based upon other grounds, however.

The record shows that no evidence of other offenses was received in evidence and, at first glance, what has heretofore been said as to the admissibility of such may appear to be dictum; however, under defendant's theory and claim that such evidence was incompetent and irrelevant, and that the attempt to get the same before the jury constituted prejudicial misconduct upon the part of the county attorney, we think the admissibility thereof was directly in issue.

II. Error is also asserted because of the giving of Instructions Nos. 7 and 8. Instruction No. 7 defined direct and circumstantial evidence. Instruction No. 8 advised the jury as to the weight to be given to circumstantial evidence. No question is raised as to the instructions being incorrect, as abstract legal propositions. The alleged error is that the State's case consisted entirely and exclusively of direct evidence and that the reference to circumstantial evidence could have no purpose, or effect, other than to direct attention to the "parade of women to the witness stand", which, when taken in connection with the remarks of the county attorney in his opening statement, constitutes prejudicial error.

The sole evidence offered by the State was the testimony of Mary Branco, the prosecutrix. Her testimony was, in substance, as follows: She went to defendant's office in Roland, Iowa, on July 20, 1951, at which time she told him she was pregnant and asked him if she "could get an abortion." He told her to come back after dark on July 27, which she did. No examination of her was made by the defendant. He placed her upon a table, gave her a shot in the arm and then inserted various instruments

in her. He then packed her, gave her instructions as to what she should do and sent her home. She paid him $50. A few days later she had a miscarriage. She also testified that her general health at the time was good.

■ Black's Legal Dictionary, Third Ed., page 697, defines direct evidence as "that means of proof which tends to show the existence of a fact in question, without the intervention of the proof of any other fact." Circumstantial evidence, by the same authority and page, is all evidence of indirect nature, "The proof of various facts or circumstances which usually attend the main fact in dispute, and therefore tend to prove its existence, or to sustain, by their consistency, the hypothesis claimed. Or as otherwise defined, it consists in reasoning from facts which are known or proved to establish such as are conjectured to exist."

■ The State had two essential ingredients to prove: (1) The act itself and (2) the existence of criminal intent. As to the first, the act, the State's case is entirely direct. As to the second, the criminal intent, the case is essentially, if not completely, based upon circumstantial evidence. Intent is a condition or state of mind, seldom capable of proof by direct evidence. The record shows the woman was pregnant, her general health was good, she asked for an abortion, she was told to return after dark, no physical examination was made to ascertain whether such abortion was necessary to save her life. While none of these facts in themselves show a criminal intent, reasoning from these facts the jury could find such intent to exist. It was direct evidence as to the facts deposed but indirect as to the factum probandum. The instructions were proper.

Other errors are alleged but are not strenuously argued. We have examined the same and find no merit therein.

Finding no error, the judgment of the trial court should be and is affirmed.—Affirmed.

All JUSTICES concur except LARSON, J., who takes no part.