0 ’Neill, J.
Defendant, for Ms second assignment of error, asserts that the Court of Appeals erred in holding that the trial court did not commit error materially prejudicial to the defendant when the court allowed the prosecutor to cross-examine a state’s witness concerning an alleged confession implicating the defendant.
An examination of the record reveals that the state called as its witness, Harry Barber, who was duly sworn. In answer to questions, Barber stated his full name, street address, city in which he lived and age. When asked whether he was employed, he declined to answer ‘ ‘ on the grounds it may tend to incriminate me.” He then refused to answer questions concerning who else lived at the same address, whether he knew the defendant, whether the defendant was his uncle, what his first name was, whether he lived at the same residence with Amil Dinsio and whether he made a statement on or about May 24, 1962, at the sheriff’s office in Mahoning County, Ohio, to an Ohio state highway patrolman, Sergeant William Cutting. Each time he answered, “I decline to answer on the grounds it may tend to incriminate me.”
The prosecutor then showed the witness a paper writing and asked him whether it contained the name, “Harry Barber.” Then the prosecutor asked him whether the name of Harry Barber appeared approximately one-quarter the way down the page, whether the name, Harry Barber, appeared at the bottom of the first page, whether the page contained the name of Harry Barber on the fourteenth line from the bottom, and whether it contained the name of Harry Barber on line seven from the bottom; and then the prosecutor asked him to look at the paper and state whether the writing of the name, Harry Barber, was the signature of the witness and asked him again whether the name, Harry Barber, at the bottom of the first page was his signature. To all these questions, the witness answered, “I decline to answer on the grounds it may tend to incriminate me.”
Defendant’s attorney finally objected to the question, “Mr. *462 Barber, were yon in Harrison County on the evening of May 22,1962?,” to which the witness answered, “I decline to answer on the grounds it may tend to incriminate me.”
The prosecutor then asserted that he would like to have the witness declared a hostile witness, with the right to cross-examine him.
The court inquired of the witness, 1 ‘ * * * by what authority do you claim such privilege?,” to which the witness replied, “By my rights, ’ ’ and later to a similar question, ‘ ‘ The Fifth Amendment. ’ ’
The court then stated:
“You are informed that the Ohio laws, as well as some other state laws have held that the Fifth Amendment to the Constitution of the United States dows [does] not control in the state of Ohio. Now Mr. Barber, you are entitled to the protection of all the laws there are in Ohio; but you are further informed that your view or your theory of the incriminating character of the question or answer you might be expected to give is not necessarily conclusive — that the answer must in itself be of such a nature that it would reasonably be inclined either to be a direct cause or raise a possibility of incrimination or would be a link or a portion in a series of such matters as might tend to incriminate you. Now the court has a right to determine on the basis of whether or not your viewpoint and your refusal to answer is upon a reasonable and logical inference that it would be an incriminating factor. Now what do you say to that?”
The witness replied, “I don’t know.”
The court then stated, “You don’t know whether it would be incriminating or not to answer with whom you live or where you reside?” The witness replied, “No.”
The court then inquired, “Are you presently under any charge in this court?” The witness answered, “Yes.”
The court then ruled: “The court is inclined to think if that is the case, you are entitled to a broad interpretation of the privilege against self-incrimination. ”
After another conference with counsel at the bench, the prosecutor proceeded to ask Barber whether he was in Harrison County on the evening of May 22 and the morning of May *463 23, 1962, whether he made a statement to the effect he had been in Harrison County, and whether he came here on the evening of May 22, 1962, at approximately 5 -.30 p.m., d.s.t., with Amil, James, William and Vincent Dinsio. To each question the witness answered, “I decline to answer on the grounds it may tend to incriminate me. ’ ’
Defendant’s attorney then objected, stating:
“We object to the prosecuting attorney reading the statement allegedly made by this witness and cross-examining this witness on this statement, and further object to any testimony —cross-examination or examination of this witness relative to the contents of any statement he may have made.” The court overruled the objection.
The prosecutor then asked Barber whether he came to Harrison County with the people named in the previous question, whether he came in a 1954 Cadillac driven by Harry Chamberlain, whether William Dinsio owned a 1954 Cadillac, whether he knew William Dinsio, whether he came to Harrison County in a 1954 Cadillac on the evening of May 22, 1962, in company with Amil, James, Vincent and William Dinsio, Charles Mulligan and Harry Chamberlain, whether there was a set of bolt cutters in the automobile, what color the bolt cutters were, what use he was going to make of the bolt cutters, whether Amil Dinsio was his uncle, whether he was employed by the Dinsio Mining Company, whether he made a statement to anybody on or subsequent to May 23 to the effect that they caught Amil and Chamberlain, whether he signed a written statement to that effect, whether he knew where the drive-in theater is on Route 250, whether he stopped at a Pure Oil station in Georgetown, Ohio, and got a drink of water on the morning of May 23, whether he was in Harrison County on the evening of May 22 and the morning of the 23rd, and whether Amil Dinsio was there. To each of these questions the witness replied, “I decline to answer on the grounds it may tend to incriminate me.”
The prosecutor asserts in his brief for the state that prior to the trial the witness, Barber, a nephew of the defendant who lived in the same house with the defendant, freely talked to police officers concerning the activities of defendant on the *464 evening of the crime and did, in fact, sign a written statement relating to these activities.
He asserts further that the state had every reason to believe, and did believe, that, if called, Barber would testify as to what he told police officers and what had been reduced to writing.
The position of the state is that, when the witness refused to answer questions on the ground of self-incrimination, the prosecution was taken by surprise because the witness had previously freely talked about these matters, and that the witness was declared a hostile witness, not because he asserted the privilege, but because the prosecutor was taken by surprise by his failure to testify about the matter concerning which he had previously freely talked.
The prosecution asserts that it does not contend that Barber was an accomplice of the defendant in the crime, that the paper writing was not read from or ever referred to as a confession or offered in evidence, nor was the jury in any way informed of the contents of the writing or what it purported to be, and that, inasmuch as the witness did not say anything but only asserted and was granted the privilege against self-incrimination, it makes no difference whether the questions were in the form of direct examination or cross-examination.
The prosecutor summed up the position for the state as follows:
(1) The witness was not required to state whether he had made a statement,
(2) there was no attempt to introduce any statement, or
(3) have anyone testify that any such statement had ever been made or relate the contents thereof.
The defendant asserts, as a third assignment of error, “that the Court of Appeals erred in holding that the trial court did not commit error materially prejudicial to the defendant-appellant when it allowed the prosecutor to place a witness on the stand for the purpose of having him claim the privilege against self-incrimination and thus create an inference that defendant-appellant in fact was a participant.”
In 86 A. L. R. (2d), 1446, Section 3, there is a discussion of this question, and the following statement appears:
*465 “A number of cases hold that prejudicial error is, or may be, committed, absent curative action by the trial court, when a prosecutor in bad faith calls as a prosecution witness * * * one who is apparently closely associated with the defendant in relevant criminal activities, for the purpose of eliciting a claim of privilege against self-incrimination to prejudice the defendant.” United States v. Tucker (C. C. A. 3, 1959), 267 F. (2d), 212; United States v. Maloney (C. C. A. 2, 1959), 262 F. (2d), 535; DeGesualdo v. People (1961), 147 Colo., 426, 364 P. (2d), 374, 86 A. L. R. (2d), 1435; Commonwealth v. Granito (1950), 326 Mass., 494, 95 N. E. (2d), 539; Washburn v. State (1956), 164 Tex. Crim., 448, 299 S. W. (2d), 706; Johnson v. State (1952), 158 Tex. Crim., 6, 252 S. W. (2d), 462; Rice v. State (1932), 121 Tex. Crim., 68, 51 S. W. (2d), 364; Rice v. State (1933), 123 Tex. Crim., 326, 59 S. W. (2d), 119; Garland v. State (1907), 51 Tex. Crim., 643, 104 S. W., 898; United States v. Hiss (C. C. A. 2, 1950), 185 F. (2d), 822, certiorari denied, 340 U. S., 948, 95 L. Ed., 683, 71 S. Ct., 532.
A leading case on this question is McClure v. State (1923), 95 Tex. Crim., 53, 251 S. W., 1099.
In most of those cases the courts relied upon a showing of bad faith on the part of the prosecutor in calling a witness for the purpose of eliciting his refusal to testify on the basis that to testify might tend to incriminate him.
The records in those cases usually indicate that the prosecutor knew, or should have known, that the witness would refuse to testify before the prosecutor called him as a witness.
There is another line of cases which hold that calling a witness under such circumstances is not error or, at most, is harmless error on “such diverse grounds as lack of any valid basis for the witness’ claim of privilege, absence of a showing that the prosecutor acted in bad faith in calling the witness, failure to show that the prosecutor’s conduct actually resulted in substantial prejudice to the defendant, and cure of the error by adequate instructions. There is even authority to the effect that no error inheres in this situation, notwithstanding that the prosecutor’s tactics prejudice the defendant as a practical matter.” 86 A. L. R. (2d), 1446, 1451, Section 4.
In the instant case, there are no grounds for claiming *466 error on the basis that the prosecutor called the witness in bad faith. The record does not show that the prosecutor had any knowledge or should have had any knowledge that the witness would claim the privilege and refuse to testify.
A witness, even though he has previously indicated that he will refuse to testify on the ground that to do so would incriminate him, may be called as a witness.
As stated in State v. Snyder (1953), 244 Iowa, 1244, 1248, 59 N. W. (2d), 223:
“The general rule is, as stated in 58 Am. Jur., Witnesses, Section 53, that ‘although a witness cannot be compelled to give incriminating testimony, he must if properly summoned appear and be sworn. ’ His privilege is available only as a witness and cannot be extended so as to excuse him from appearing. If the witness himself cannot escape being sworn by claiming in advance that he will refuse to testify, certainly the defendant, against whom such witness is offered, cannot claim greater rights.” See, also, 8 Wigmore on Evidence, 402, Section 2268.
The possibility that a witness may claim the privilege does not prohibit the prosecutor from asking questions. Commonwealth v. Granito, supra (326 Mass., 494).
There is no error in this case in the prosecutor’s calling of the witness or in the first series of questions which the prosecutor asked and which elicited from the witness the claim of privilege and a refusal to testify. However, it soon became clear to the prosecutor that the witness intended to claim the privilege and to refuse to testify concerning any of the circumstances surrounding the commission of the alleged crimes, for which the defendant was on trial, and his alleged alibi. This became abundantly clear to the prosecutor when the court, in response to the prosecutor’s demand, declared the witness a hostile witness and permitted the prosecutor to cross-examine the witness. It became unmistakably clear when the court inquired of the witness whether he was under charge in the court and, upon an affirmative reply from the witness, ruled that the witness was entitled to claim the privilege and to refuse to answer the questions which were being asked.
The prosecutor then proceeded with extensive cross-examination of the witness, and the court overruled the objections *467 of the defense attorney. The record does not show that the court instructed the jury concerning the inferences to be drawn from the witness’ refusal to testify or concerning the regard which the jury should pay to the inferences raised by the questions posed by the prosecutor which the witness refused to answer.
The court’s overruling of the objections of the counsel for the defense and the long, detailed and repetitious questions of the prosecutor concerning the activities of the witness on the day of the alleged commission of the crimes by the defendant and concerning the witness’ knowledge of and association with the defendant on that day certainly would tend to raise in the minds of jurors an inference of a prior statement by the witness concerning these circumstances and activities and an inference that the witness participated in them with the defendant. This was prejudicial to the defendant.
The same question that is raised in this case was raised in Washburn v. State, supra (164 Tex. Crim., 448). In disposing of this question, the court, at page 454, stated:
“As was pointed out in the original opinion, after it was made clear that the witness Nelson refused to testify as a witness upon the grounds of self-incrimination state’s counsel continued his interrogation of the witness and thereby, in much detail by the questions propounded, got before the jury the inference not only that Nelson was an accomplice but that appellant was guilty with him in the commission of the offense charged.
“The questions so propounded effectually suggested that not only was Nelson guilty but also that appellant was guilty of participation in the murder of the deceased.
“When the showing was properly made that Nelson could not be compelled to testify as a witness in the case because of his claim of self-incrimination, the state — under the authorities cited in our original opinion — should not have endeavored, by further questioning of the witness, to get before the jury facts, circumstances, or conditions which it could not prove by the witness, himself.” See, also, DeGesulado v. People, 364 P. (2d), 374.
As is stated in People v. Wells, 100 Cal., 459, 462, 34 P., *468 1078, “the wrong and the harm was in the asking of the question.”
The purpose of such continued questioning is well stated-, as follows, in State v. Gulbrandsen (1953), 238 Minn., 508, 515, 57 N. W. (2d), 419:
“Obviously, the innuendoes contained in the questions and not the answers were what the prosecution sought to get before the jury.”
The court did not commit prejudicial error in allowing the prosecutor for the state to call the witness and to pursue his inquiry sufficiently to determine whether the witness intended to claim the privilege of immunity. Once it was established that the witness intended to claim his privilege of immunity, the court committed error prejudicial to the defendant in permitting the prosecutor to continue his line of questioning, which placed before the jury innuendo evidence or inferences of evidence which the state could not get before the jury by direct testimony from the witness.
The judgment of the Court of Appeals is, therefore, reversed.

Judgment reversed.

Taft, C. J., Zimmerman, Matthias, Griffith, Herbert and Gibson, JJ., concur.