**STATE of Missouri, Respondent,**

v.

**George Davis YAGER, Appellant.**

No. 52437.

Supreme Court of Missouri,
Division No. 1.

June 12, 1967.

Motion for Rehearing or for Transfer to Court en Banc Denied July 10, 1967.

Norman H. Anderson, Atty. Gen., Jefferson City, Norman A. Selner, Special Asst. Atty. Gen., Clayton, for respondent.

Norman S. London, St. Louis, for appellant.

HENLEY, Judge.

Defendant was charged by information with burglary, second degree, and stealing. Sections 560.070 and 560.156, RSMo 1959, V.A.M.S. A jury found him guilty as charged and assessed his punishment at imprisonment for four years for burglary and four years for stealing. His motion for new trial was overruled and the court sentenced him in accordance with the verdict, the sentences to run consecutively. Defendant appeals. He was represented by court-appointed counsel in the trial court and is represented by other counsel in this court. His counsel has filed a brief and a reply brief and presented oral argument in defendant's behalf.

Defendant does not question the sufficiency of the evidence. In the early morning of December 11, 1965, at about 12:50 A. M., Sergeant Don DeLaPorte and Officer Kenneth Foxall of the Hannibal Police Department were patrolling an alleyway in a police car at the rear of the Yates and Hagan Clothing Store in Hannibal when they saw a 1961 Oldsmobile parked alone just off the alley in a parking lot a short distance north of the clothing store. They stopped and Sergeant DeLaPorte looked in the Oldsmobile where he saw several bundle's of men's and boy's suits, on hangers, on the back seat and floor. Being suspicious of these circumstances, Sergeant DeLaPorte went across the alley to check the rear door of the Yates and Hagan Clothing Store. He drew his revolver and, turning the door handle, discovered that the door was unlocked; at the same moment he heard a "scuffling" sound inside. As he opened the door he saw a man move toward the front of the store; the next instant he saw another man moving toward the front. Street lights in front of the store silhouetted the two men. As he moved toward the front of the store he heard the glass of the front door being broken and saw the two men go through the door, one going directly across Main street and the other disappearing in another direction. He followed them through the door in close pursuit and called to them to halt. Defendant, being directly across the street, stopped, and as he turned to face the officer he had a revolver in his right hand. The officer ordered him to drop the revolver and he did, throwing it into the gutter beside the walk. The officer ordered defendant to lay face down on the sidewalk with his hands above his head; in that position he was arrested, handcuffed and searched. Another officer took him to jail and Sergeant DeLaPorte, after picking up the revolver from the gutter and removing its cartridges, went back inside the clothing

store. There he found fourteen or more bundles, each containing about ten suits on hangers, tied with a belt and piled on the floor and a table near the rear door of the store. Inside the office he found drawers of a desk standing open, invoices and other papers scattered about, a golf bag (not the property of the store) containing tools commonly used as burglar tools, and the store's metal cash box, empty. The owners locked the store securely when it was closed for the day on December 10th; $215.00 had been left in the cash box on a shelf in the office at the close of business that day. Entry into the store was gained by cutting a hole through the roof. On search, the back seat and trunk of the parked Oldsmobile was found to contain seventy suits similarly bound in bundles, all belonging to and stolen from the store.

The first point briefed is that "Prejudicial error was committed * * * when * * * [the] police officers testified that * * * appellant refused to make a statement * * *" while under arrest.

Defendant concedes that trial counsel made no objection to this testimony and did not assign this point as error in his motion for new trial. The point is not preserved for review. State v. Willis, Mo., 283 S.W.2d 534, 538[7]; State v. Brookshire, Mo., 353 S.W.2d 681, 685[10]; Criminal Rule 27.20(a), V.A.M.R. However, defendant asks that we invoke and review the point under the "plain error rule," Criminal Rule 27.20(c).

That small portion of the officers' testimony quoted in defendant's brief does appear to be prejudicial for its substance is, in effect, that defendant refused to make a statement while under arrest. The rule in this state is that the silence of an accused while under arrest is not admissible in evidence against him as he is then under no duty to make a statement. State v. Vainikos, Mo., 366 S.W.2d 423, 427[4, 5] and cases there cited. However, we have read the testimony of these officers and find that not only is the testimony quoted in his brief taken out of context, but, also, that defendant himself brought out this testimony first, during his cross-examination of the first witness, Sergeant DeLaPorte, and that he pointedly continued that same line of cross-examination with Officer Schutze. Furthermore, defense counsel during argument, called to the jury's attention that defendant had refused to say anything in reply to the officers' questions and his reasons for refusing. Considering all of the testimony of the officers, defendant's cross-examination of the officers and this argument, we conclude that he purposely chose not to object to this testimony as a part of his trial strategy. In these circumstances, he is in no position to ask that we invoke the rule, and, for the reasons indicated, we decline to do so. State v. Worley, Mo., 353 S.W.2d 589, 596 [11]; State v. Meiers, Mo., 412 S.W.2d 478, 481[5].

His next point is that the court erred in compelling state's witness, Larry P. Harris, to invoke his constitutional privilege against self-incrimination in the presence of the jury.

Mr. Harris was called to the stand by the state. He stated his name in response to a question and then, on request of counsel for defendant, further proceedings were had outside the presence and hearing of the jury. A police officer, the last witness to testify before Mr. Harris took the stand, testified that he had talked to Larry P. Harris. An inference could be drawn from the officer's testimony that Harris was the owner of the Oldsmobile found behind the Yates and Hagan Store loaded with bundles of suits. The record indicates, however, that Harris was not charged with this offense.

During the proceedings outside the presence of the jury separate counsel for Mr. Harris informed the court that he had advised his client to, and that Harris would, claim the protection of Article I, § 19,

Constitution of Missouri, V.A.M.S., and refuse to answer any questions which might tend to incriminate him. Mr. Harris' counsel further informed the court that he had advised counsel for the state previously that his client would refuse to testify for the reasons stated.

■ Counsel for defendant strongly objected to the witness being required to claim his privilege against self-incrimination in the presence of the jury for the reason that to do so, he says, would be highly prejudicial to defendant. For this reason, counsel requested that the court rule now, outside the presence of the jury, that Harris was not required to return to the witness stand and testify further in the presence of the jury. The court stated, in substance, that he would, of course, sustain an objection on that ground when the witness was asked a question the answer to which might tend to incriminate him; the court also indicated that it appeared probable that the witness would not be required to answer more than his name, age and address. The court took the position that there was no specific question to the witness, with this objection interposed, before the court for a ruling, and until such question was posed and proper objection made the court could not rule intelligently; that the proper time for objection on this ground is when the first question is asked that might tend to incriminate the witness. No questions were asked the witness during these proceedings and the jury was returned to the courtroom.

Mr. Harris returned to the witness stand and was asked three questions: his age, marital status, and his address; objections were made on the above-stated grounds and overruled, and the witness answered. Five more questions were asked, all concerning the title and ownership of the Oldsmobile found at the scene of the burglary. Objections to all were sustained.

■ As stated by the learned trial judge, no question had been asked the witness and no objection made (before or during the proceedings outside the hearing of the jury) that presented anything on which the court could rule. Until a question is asked and objection made nothing is presented requiring a ruling. Although the judge was informed of the general nature of the inquiry that was to be made, he was not required to anticipate the content, nature and form of a specific objectionable question that *might* be asked, and rule in a vacuum, so to speak. The court informed counsel how he would rule on a proper objection when a question was asked the answer to which might tend to incriminate the witness; that is all the witness was entitled to; defendant could be entitled to no more.

But we do not rest this decision on the above reasons alone. In State v. Shepard, 334 Mo. 423, 67 S.W.2d 91, 95[8], the court held "The claim [of privilege against self-incrimination] could not be interposed for * * * [the witness] by the defendant; nor can the defendant object even though the court failed to accord the witness due constitutional immunity." See also: State v. Ross, Mo., 371 S.W.2d 224, 228[5]. Since the defendant is in no position to object to the court requiring the witness to give testimony incriminating himself, it reasonably follows that he is in no position to complain where, as here, a proper objection at the proper time forestalled evidence which might tend to incriminate the witness. The court merely required the witness to claim the privilege when, and if, a specific objectionable question was asked; certainly, the defendant, against whom such witness is offered, cannot claim greater rights in this respect than the witness. The point is ruled against defendant. The cases from other jurisdictions cited by the state [1] and defendant [2] are not persuasive.

---

1. State v. Snyder, 244 Iowa 1244, 59 N.W.2d 223; State v. Dinsio, 176 Ohio St. 460, 200 N.E.2d 467.

2. De Gesualdo v. People, 147 Colo. 426, 364 P.2d 374, 86 A.L.R.2d 1435; Washburn v. State, 164 Tex.Cr.R. 448, 299

The third point briefed is in two parts: that the court erred (1) in admitting in evidence the revolver (and cartridges) Sergeant DeLaPorte saw defendant throw in the gutter, and (2) in admitting in evidence testimony that the serial number had been filed off the revolver. The second part of the point is not assigned as error in defendant's motion for new trial and is not preserved for review.

Defendant contends that his possession of the revolver and cartridges was not an element of the offense of burglary and stealing and that these articles were not relevant or material to any issue in the case; therefore, their admission in evidence " * * * was highly prejudicial to * * * [him] * * *," because "The jury's natural reaction to the introduction of a weapon has a tendency of prejudicing the jury against the accused without sufficient reason." His objections at the trial, and the assignments in his motion for new trial, were on the ground that his possession of these articles was not an element of the offense charged; not, specifically and clearly with the particularity required, that they tended to prove another crime.

There can be no question about defendant having the loaded revolver in his possession in the store and while Sergeant DeLaPorte was following him in close pursuit through the broken front door and across Main street; the officer testified defendant had the revolver in his hand when he stopped and turned to face the officer, after DeLaPorte called for him to halt; in fact, defendant stated on direct examination that he had the revolver in his hand when the officer arrested him and that it looked " * * * like a pretty terrible gun to have."

▮ From this evidence a jury reasonably could find that the revolver and cartridges were in defendant's possession when he broke and entered the store, and such possession was some evidence that defendant had the intent to steal while in the store. The testimony that the revolver and cartridges were in defendant's possession was relevant on the question of intent. These articles were certainly connected with the defendant, and were sufficiently connected with the crime charged and defendant's attempt to escape from the scene thereof themselves to become relevant under the facts of this case. They were, therefore, properly admitted in evidence. State v. Lindner, Mo., 282 S.W.2d 547, 552 [8]; State v. Fritz, Mo., 379 S.W.2d 589, 590[4]; State v. Evans, Mo., 237 S.W.2d 149, 151[1, 2]; State v. Russell, Mo., 324 S.W.2d 727, 731[8].

In his last point defendant contends that the court erred in giving an instruction on the defense of alibi, because he did not request the instruction and the evidence offered by him " * * * was not evidence of [an] alibi."

Defendant says that there was no evidence to the effect that he was any place other than the *vicinity* of the Yates and Hagan Store at the time of the burglary; that this was not evidence of an alibi, but was merely a denial that he participated. He asserts that the instruction disparaged his defense; he seems to say that his defense was: present in the "vicinity," but not participating in the crime. Defendant testified that he was sitting in a parked automobile somewhere on Main street in Hannibal at the time of the burglary; that some friends came by and told him to get out of the car and run; that he did, and ran some distance with these friends when the police officer stopped and arrested him across the street from the Yates and Hagan Clothing Store; that he had not been inside the store at any time that night. This evidence was, essentially, that at the time of the crime he was at another and different place than that at which it was committed.

S.W.2d 706; Vandegrift v. State, 237 Md. 305, 206 A.2d 250; State v. Dinsio, 176 Ohio St. 460, 200 N.E.2d 467; San

Fratello v. United States (C.A.5th), 340 F.2d 560.

■ We are of the opinion that had the court failed to give an alibi instruction, the defendant would be here contending that the court erred in that respect, and we have the further opinion that that contention would have some merit. The court did not err in giving an instruction on alibi. State v. Duncan, 336 Mo. 600, 80 S.W.2d 147, 152[11]. In State v. Bess, Mo., 387 S.W.2d 575, cited by defendant, the court held that the trial court did not err in refusing an alibi instruction in a robbery case, where the robbery was committed on a public sidewalk and defendant's statement placed him at the scene of the crime during its commission. The Bess case is no authority for defendant's contention that the court should not have given an alibi instruction.

Examination of the record as required by Criminal Rule 28.02, V.A.M.R., discloses no error.

The judgment is affirmed.

All concur.