**STATE of Missouri, Respondent,**

v.

**Jesse BESS, Jr., Appellant.**

. No. 50554.

Supreme Court of Missouri,

Division No. 1.

March 8, 1965.

Thomas F. Eagleton, Atty. Gen., Jim DeNeen, Asst. Atty. Gen., Jefferson City, for respondent.

HENRY J. WESTHUES, Special Commissioner.

Jesse Bess, Jr., was tried before a jury and convicted in the Circuit Court of Jack-son County, Missouri, on a charge of robbery in the first degree. The information alleged that Bess had previously been convicted of a crime. The trial court held a hearing and found the allegation to be true. The court fixed punishment at seven years' imprisonment. A motion for new trial was overruled.

In the motion for new trial, it was alleged that the trial court erred in not giving an instruction on alibi. This is the only complaint stated. The record shows that Bess was represented throughout the trial by attorney Robert S. Sundeen. However, no brief was filed in this Court on defendant's behalf.

The crime was alleged to have been committed on June 5, 1963, and the trial was had on October 8 and 9, 1963. Defendant was granted thirty days in which to file a motion for new trial. It was filed on November 15, 1963, and was overruled on December 19, 1963, and sentence was passed. Notice of appeal was filed on the same day and defendant was permitted to appeal as a poor person.

The evidence justifies the following statement of what occurred with reference to the alleged offense. Edward L. Ross, the victim of the robbery, had received about $594 as compensation for an injury he had sustained. On the evening of June 4, 1963, he went to a tavern with about $550 in his billfold. He sat at a table, ordered a drink, and was joined by the defendant Jesse Bess, Jr., and Loviss Todd. Ross paid for a number of drinks for both Bess and Todd. At about midnight, Ross left the tavern and went to a laundromat to get some clothes he had placed in a dryer. Ross testified that when he reached in the dryer someone struck him over the head. His version of what occurred was as follows:

"A * * * I opened up the second dryer on the right side and put my head in there. I felt a terrific blow on the back of the right ear, and then I felt being dragged to the rear of the laundromat where the drain is in back of

the dryers, and at that time I was being kicked and hit numerous times. I was knocked straight down this way (indicating), and I turned because I was being kicked on the side of the head. As I turned on my back I saw Jesse and Loviss Todd, and when I was on my side Loviss Todd was kicking me with the heel of his shoe, and he said 'I will kill the bastard'. Jesse said, 'I got it', meaning my wallet, and I felt a hand pulling the wallet out, and Loviss was still kicking, trying to put my eyes out. At that time Jesse said 'I got it', I heard feet scrambling. I got up and I recognized both of them. I recognized when I was on my back and Loviss was trying to put my eyes out with his heel so I wouldn't recognize then because I hadn't seen who was hitting me in the back of the head because I was knocked straight forward. As soon as they left I got up immediately and ran after them hollering, hollering at Jesse and Loviss, and there was a car driving south about a half a block, and a cab driver asked me what was the matter. I was sort of hysterical, and I told him to call the cops, I had been robbed. He called the cops, and the cops came."

Defendant Jesse Bess, Jr., was arrested later that night by the police. Ross was treated at a hospital and when taken to a police station he identified Bess as the person who had robbed him. At the trial Ross testified that it was defendant and Loviss Todd who had committed the robbery.

When Bess was arrested the police found about $47 in "paper money" on his person. Later, another search was made and the police found $340 in paper money tucked in the fly of his trousers. The denominations of these bills corresponded to the description given to the police by Ross. Bess had denied knowing anything about the robbery until the $340 was found. Thereafter, he made an explanation of the manner in which he came into possession of the money. Bess did not testify at the trial. A statement taken by the police, wherein Bess stated how he obtained the money, was introduced in evidence by the defendant. The principal portion of this statement reads as follows:

"'Q  Will you tell me in your own words just what you know about this robbery?

"'A  Yes. About 12:30 A.M. on 6–5–63, I was standing in front of the drug store located on the northwest corner of 27th and Troost when I saw Mr. Ross leave the Miami Tavern, located on the southwest corner of 27th and Troost, and walk south on Troost St. on the west side of the street. Earlier in the evening I had met Mr. Ross in the Miami Tavern and that's how I knew him. When he started down the street two colored men, unknown to me, followed him. I saw Mr. Ross go into a doorway a few doors down the street from the Tavern, and the two colored men followed him inside. I started walking down that way and as I approached the door where he entered I noticed it was a laundromat. As I came even with the door to the laundromat the two colored men ran out the door and Mr. Ross ran out behind them. Mr. Ross was yelling something, but I couldn't understand what he was saying. As Mr. Ross came out the door, I saw his billfold hit the sidewalk. I picked up the billfold and ran across the street and down to 27th St. and over to Forest. Mr. Ross was still chasing the two colored men south on Troost. When I got to Forest I stopped and opened the billfold and took all the money out and threw the billfold away. I walked back to 26th and Troost and caught a cab and went to 29th and Prospect to Bob's cafe. I then counted the money I had taken from Mr. Ross' billfold and found that I had $340. I caught another cab and went home and changed shirts and then

went to 12th St. I stayed on 12th St. a short time and then went back to 26th & Troost to Conway's cafe. A short time after I arrived at Conway's cafe I was arrested by Det. Young.

" 'Q Jesse, what happened to the $340.00?

" 'A I hid it in the fly of my trousers, and about 3:00 a. m. on 6–6–63, I was brought down from the jail by Det. DeGraffenreid and Young to the interrogation booth on the 2nd floor, and searched, and Det. Young found the $340.00.' "

█ Defendant has not questioned the sufficiency of the evidence to sustain his conviction and it is apparent that the evidence presented a question of fact for a jury to decide. However, the defendant urged in his motion for new trial that the trial court erred in not giving an instruction on alibi. In his motion, it is stated that ."The Court erred in failing to give an alibi instruction to the jury. A statement given by the defendant to the police was read in open Court establishing an alibi on the part of the defendant."

█ Defendant relies on the statement quoted above as the sole basis to authorize an alibi instruction. It may be noted that in the statement the defendant placed himself at the scene of the crime at the time and during its commission. Certainly, defendant was not entitled to an alibi instruction. This is for the reason that the evidence did not support an alibi. See 23A C.J.S. Criminal Law § 1203, p. 524, and State v. McLane, Mo., 55 S.W.2d 956, 1. c. 958(3), and authorities there cited.

We have examined matters required to be reviewed under S.Ct. Rule 28.02, V.A.M.R., and find no reversible error therein.

The judgment is affirmed.

PER CURIAM.

The foregoing opinion by WESTHUES, Special Commissioner, is adopted as the opinion of the Court.

All of the Judges concur.