STATE of Missouri, Respondent,

v.

Leo Robert WEBB, Jr., Appellant.

No. 52964.

Supreme Court of Missouri,
Division No. 2.

Feb. 12, 1968.

Norman H. Anderson, Atty. Gen., Jefferson City, Richard E. Watson, Sp. Asst. Atty. Gen., North Kansas City, for respondent.

Robert G. Duncan, Austin F. Shute, Pierce, Duncan, Beitling & Shute, Kansas City, for appellant.

EAGER, Judge.

Defendant was charged by amended information with stealing copper tubing or pipe of the value of $236; it was also alleged that he had previously been convicted of a felony, imprisoned therefor, and subsequently discharged. He was found guilty by a jury and, upon findings by the Court of the prior proceedings, he was sentenced to a term of seven years. Defendant was represented at the trial and is represented on this appeal by privately employed counsel. A motion for new trial was timely filed; we need not digest that, for it sufficiently raised the points now briefed on this appeal. One contention is that the evidence was not sufficient to show defendant's participation in the crime, so we shall relate the evidence in some detail.

The Kansas City police received a call as 10:40 p. m. on April 26, 1966, to check for prowlers at the "rear" of 1601 East 8th Street. Two cars responded. One officer Wilbur Wright, got out and went south between two apartment buildings, towards 9th Street, while the other, Charles McKinnie, drove to a parking lot just east of 1609 East 8th, got out and walked west. Both thus approached a fenced storage lot of the Foley Heating & Plumbing Company, the address of which was 1516 East 9th Street. Officer McKinnie, walking "around the west side" of a four-car garage at the rear of the parking lot, saw two boys or men running in the fenced area; one went over the south fence, and one over the east fence; he started to chase the latter and thus went behind the garage where he immediately saw the defendant, Leo Webb, and his brother Jerry Lee Webb. The defendant was sitting on a long piece of two-inch copper tubing holding it with his right hand, and facing south; the brother was kneeling, facing north, with a hacksaw in his hand trying to saw the pipe. When the officer thus came upon the two, defendant stood up and both were arrested. At that time defendant

said that all he was doing was sitting there watching some boys "steal copper." The hacksaw was marked by the officer and it was later received in evidence as an exhibit.

Officer Wright, when he had walked between the buildings and reached the fence, saw three persons inside the storage lot taking pipes from the rack at the rear of the Foley building. These were subsequently apprehended, just how is not shown. Two were juveniles, one of these being another brother of the defendant. There was no objection to the evidence identifying these persons. The garage mentioned was at the northeast corner of the Foley storage lot; this officer saw the defendant brought out from the south side of that garage by Officer McKinnie. Neither officer saw the defendant inside the lot. The fence was a chain link fence, about 6 feet high, with barbed wire strands along the top. Sundry copper tubing and pipe were found outside the fence at the northeast corner of the lot. One officer took the arrested persons to the station while the other stayed for a time with Mr. Foley, who was called to the scene. The officers found a 1966 Chevrolet pickup truck parked about one hundred and fifty yards from the place of defendant's arrest. This truck bore the painted inscription: "Leo R. Webb, Centerville, Missouri." It carried no Missouri license plate.

Donald E. Foley testified: that he was the Vice-President and part owner of the Foley Heating & Plumbing Company, a corporation; that it owned the pipe; that when he arrived on the scene he met the officers and was taken to the northeast corner of the lot, where he saw copper pipe on the ground outside the lot; that they found more pipe inside the lot which had been taken from the rack; that he and the officers took the pipe inside the shop and laid it on the floor, where it was photographed by the police the next day; that the pipe which they brought from outside the lot to the shop consisted of 120 feet of two-inch pipe and one

hundred feet of one-half inch pipe; that the two-inch pipe cost them $1.80 per foot and the half-inch pipe twenty cents per foot; that he was present when the photographs were taken. He further testified that the pipe was regularly kept in the rack in full lengths, that some of the pipe which they carried in had been cut and "burred," and that other pieces had been doubled up and bent.

It was further shown by the testimony of Donald R. Powers, a detective who made an investigation on the next morning, that he checked the lot "for security" and found that a section of boards had been removed at or near the northeast corner of the fence at a point where the fence ran about two feet above the ground; also, that there were "fresh" scuff marks in the soil there, not yet dried, indicating that entry had been made at that point. This witness also testified that there were saw marks on some of the pipe; he took several photographs none of which, incidentally, have been sent here on this appeal (an omission which is entirely too common with reference to documentary and photographic exhibits in criminal appeals).

Two police reports were produced by the officers and used by them on the stand. Upon request of defendant's counsel, these were freely furnished to him for his examination. One was a so-called larceny report, and the other an "investigation" report prepared by the Detective Department. The latter report contained hearsay statements (brought out by defense counsel on cross-examination) to the effect that Ronald Webb, defendant's brother, had borrowed defendant's truck that night, and that defendant got a call from some unknown person at about 10:00 p. m. that his brother was down on 8th Street "hot rodding" in his truck; also, that defendant and his other brother went down there, found the truck, saw the boys "behind the garage," walked over towards them and were arrested; further, that defendant denied "any part in the theft." The source

of these statements was not shown. Defendant did not testify. After these matters were shown on cross-examination, and without objection, the State offered the report as an exhibit. The Detective who testified was not asked about these statements in the report; Officer McKinnie denied hearing any statement from defendant about the telephone call and the related matters; he did recall that the defendant said he had "just got there," and that he was looking for his brother, but he also recalled the prior statement of the defendant that he was just *sitting there* watching "the boys steal copper."

■ The first point raised by defendant's counsel is that the Court should have given an alibi instruction. No such instruction was offered and the record does not show that an instruction on that subject was even requested. Under these circumstances it is clear that the Court was not in error in failing to give one. State v. Harris, Mo., 356 S.W.2d 889; State v. Keck, Mo., 389 S.W.2d 816; State v. Westfall, Mo., 367 S.W.2d 593; State v. Johnson, Mo., 234 S.W.2d 219; State v. Hutchin, Mo., 353 S.W.2d 701; State v. Fields, Mo., 293 S.W.2d 952. In Harris, supra, it was said that a "request" for an instruction "consists of preparing and presenting to the court a written instruction with the request that it be given." (356 S.W.2d loc. cit. 891) That precise point is not involved here, for the record does not show any request whatever. We deny this point of defendant for the reasons just stated, but we note also in passing that (on the State's evidence, undenied) defendant was found at the scene, just outside the fence, and at a point where sundry copper pipe had been deposited after its removal from the rack and lot. On these *facts*, an alibi instruction would not have been warranted. For a closely analogous situation see State v. Bess, Mo., 387 S.W.2d 575, where it was held that the evidence did not justify an alibi instruction. In State v. Simon, Banc, Mo., 375 S.W.2d 102, cited by defendant, the defendant testified

and his evidence tended to show that he was actually elsewhere at the time of the theft of a fur piece in a certain department of a large department store, even though he may have been in the building. However, the complete distinction between that case and ours is that the defendant there offered an alibi instruction (which was refused) in a form which the State, even on appeal, did not criticize. The first point of defendant is wholly without merit.

Next, defendant contends that the evidence of the State was insufficient because there "was no evidence that the owner of the property had not consented to the taking * * *." Counsel argue that proof of a taking without consent is essential to a conviction of stealing, citing State v. Loeb, Mo., 190 S.W. 299; that case is not applicable on the facts. The opinion simply recognized the rule that the taking must not have been done with consent, and that the burden is on the State. Also cited is State v. Patterson, 347 Mo. 802, 149 S.W.2d 332, which will be mentioned later. We note here that the lack of consent need not be proven by direct testimony of the owner, but that it may be established by circumstantial evidence giving rise to a reasonable inference that the taking was done without consent. State v. Emry, Mo., 18 S.W.2d 10; State v. Slusher, 301 Mo. 285, 256 S.W. 817. In fact, State v. Patterson, supra, cited by defendant, announces this rule at 149 S.W.2d loc. cit. 333, where the Court said: "Lack of consent need not be proven by direct evidence, but may be proven by circumstantial evidence. State v. Slusher, 301 Mo. 285, 256 S.W. 817." The argument of defendant on this point is essentially that Mr. Foley did not expressly testify: that defendant and his brother were not employed by or authorized to act for his company; that he did not consent to the removal of the pipe; that the hole in the fence had not been "innocently" made; or that the corporation made any complaint. It is entirely clear that the facts in this case justified a fair inference of a lack

of consent to the taking. At about 11:00 p. m. there were three persons inside the strongly fenced lot removing 20 foot lengths of pipe from the rack where they were regularly kept; some, after removal, bore saw marks and some had been bent or "doubled" over; the three persons immediately ran when the police arrived, leaving pipe scattered around the rack; considerable pipe had been carried or pushed outside the lot; defendant and a brother were positioned at a corner of the lot, near the place where a recent breach had been made under the metal fence, holding and sawing, respectively, on a long length of the pipe; defendant's pickup truck was parked nearby. And defendant, when thus surprised, made the remark that he was just "watching some boys steal copper." The pipe was stacked on the rack, as usual, when Mr. Foley left that day at 5:30. A total of at least 220 feet of pipe had been removed from the rack, much of it apparently having been taken outside the fence. Pipe for use on plumbing jobs is not usually bent or "doubled up"; nor is it sawed and "burred" while lying on the ground. A very clear inference of a lack of consent arose from the facts as thus established.

Lastly, defendant says that an acquittal should have been directed because there was no substantial evidence of his participation in the crime. Apparently the contention is based, at least in part, upon statements appearing in the police report to the effect that one juvenile (Cervantes) who had been inside the lot, "denied knowledge of the Webb brothers," and that someone (presumably defendant) told of the supposed telephone call stating that defendant's brother was "hot rodding" defendant's truck down on 8th Street, and that he went down there to investigate. After counsel for defendant had been permitted to examine the report in question, and had cross-examined at length concerning the supposed statements, the State offered the report in evidence, obviously that it might be shown in its full context. It

was defendant, however, who brought out the evidence originally, on cross-examination.

In considering the sufficiency of the State's case after a verdict of guilty, "the court accepts as true all of the evidence in the record tending to show defendant's guilt, whether the same be circumstantial or direct in nature, together with all favorable inferences reasonably to be drawn therefrom. Defendant's contradictory evidence, if any, is to be disregarded. If a submissible case is made out, the truth of the testimony and the reasonableness of the inferences to be drawn are exclusively for the jury. State v. Brewer, Mo.Sup., 325 S.W.2d 16, 20; State v. Morris, Mo.Sup., 307 S.W.2d 667, 668." State v. Armstrong, Mo., 361 S.W.2d 811, loc. cit. 813.

Counsel for defendant cite two cases, State v. Odbur, 317 Mo. 372, 295 S.W. 734, and State v. Castaldi, Mo., 386 S.W.2d 392. These merely hold that evidence showing the mere opportunity to commit a crime, or giving rise to a "suspicion," or merely showing defendant's presence, is insufficient. We do not doubt the validity of that principle. In this case a substantial amount of copper pipe had been stolen, within the definition of our statute and our cases; the defendant was found, substantially at the very point where entry had been made, holding a long piece of the pipe while his brother sawed on it; his younger brother was inside the lot; his truck was parked nearby. The direct testimony of the policemen put the defendant very clearly in the picture as an affirmative participant.

In State v. Smith, Mo., 394 S.W.2d 373, a burglary case, the defendant received bottles of whiskey as they were passed out of a window. His conviction of both burglary and stealing was sustained. The facts in the case of State v. Ramsey, Mo., 368 S.W.2d 413, did not establish the defendant's participation so definitely as do those in the present case, yet they were held sufficient to establish his guilt of attempted burglary.

The only fair inference here from the State's evidence (and defendant offered none except by way of cross-examination) was and is that defendant's participation in the stealing was established. This inference did not rest on circumstantial evidence, but upon direct, eyewitness testimony. Defendant's real difficulty was that the jury did not believe his second-hand explanation, and that it did believe the officers.

The amended information, verdict, judgment and sentence are sufficient. The verdict was technically incorrect in that it found defendant guilty of "stealing over fifty dollars as charged in the information," rather than of stealing property of the value of over fifty dollars. However, the information, the evidence and the instructions showed beyond question that defendant was charged, tried and convicted of the offense of stealing property of the value of more than fifty dollars. There is no reversible error in that irregularity. State v. Pinkerman, Mo., 349 S.W.2d 951; State v. Mitts, Mo., 347 S.W.2d 677; State v. Brewer, Mo., 338 S.W.2d 863. The precise point has thus been ruled by this Court at least three times.

The judgment is affirmed.

All of the Judges concur.