STATE of Missouri, Respondent,

v.

Clarence BENNETT, Appellant.

No. WD 32409.

Missouri Court of Appeals,
Western District.

April 13, 1982.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
June 1, 1982.

Robert A. Hampe, St. Louis, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, Douglas Lind, Asst. Atty. Gen., for respondent.

Before NUGENT, P. J., and TURNAGE and LOWENSTEIN, JJ.

TURNAGE, Judge.

Clarence Bennett was found guilty by a jury of assault in the second degree, § 565.-060, RSMo 1978 [1], and leaving the scene of a motor vehicle accident, § 577.060. The jury assessed punishment on the assault charge of one year in jail, and on leaving the scene

1. All statutory references are to RSMo 1978 unless otherwise noted.

charge of 30 days in jail. On finding that Bennett was a persistent offender, the court sentenced Bennett to imprisonment for a term of four years on each charge, with the terms to be served concurrently.

Bennett complains of the sufficiency of the evidence; in failing to give certain instructions, and in giving others; and in restricting the cross-examination of a juvenile. Affirmed.

About 1:00 A.M. on September 28, 1979, Bennett emerged from the Pow-Wow Lounge in Columbia, and crossed North Street to the Pow-Wow parking lot. Immediately east of the Pow-Wow Lounge is the Brief Encounter Lounge. The parking lots for each of the lounges is located across the street, with the Brief Encounter lot opposite the Pow-Wow Lounge and the Pow-Wow lot immediately west of the Brief Encounter lot. The lounges are located on the north side of North Street between Eighth Street and Coates Street. Between Eighth Street and Coates Street, North Street does not have sidewalks and the doorways of the bars are within a foot of the street.

When Bennett emerged from the Pow-Wow he observed a small group of people on the Pow-Wow parking lot watching some altercation or fight. There was also a group of people standing near the Brief Encounter doorway and he yelled some comments at them. After going to his truck, which was parked on the Pow-Wow lot, Bennett returned to approach the group in front of the Brief Encounter and said a couple of gross words. There was some discrepancy in the evidence at this point as to whether Bennett walked to his truck or made a dead run for it, with some of the people from the group in front of the Brief Encounter in hot pursuit. At any rate, there is no dispute that Bennett got in his truck after hurling some comments at the group in front of the Brief Encounter, locked the doors, then drove east past the bars. On this trip, Bennett struck at least one motorcycle which was parked along the street, and there was evidence that Bennett, as he passed the bars, was turning his truck sharply back and forth so that it went from side to side of the street. There were anywhere from 20 to 75 people in the street at this time who had emerged from the bars because it was closing time, and they began jumping to avoid the truck.

Bennett drove east to Eighth Street, turned around in a parking lot, and proceeded west on North Street accelerating quickly and swerving from side to side. As he neared the Brief Encounter, Bennett swerved his truck directly toward the people standing by the door. There was testimony that as he headed directly for the people standing in the door, he was traveling between 35 and 40 miles per hour. One witness, standing near the Brief Encounter as Bennett headed his truck toward that group, said that he saw Bennett driving the truck headed straight for him. This witness took a step toward the door and the truck passed, and immediately there was a loud noise.

The loud noise was the impact of Bennett's truck striking a 14-year old girl in the street. The girl testified that she was reading a piece of paper which blew out of her hand and she had stepped into the street to retrieve it when she was struck. She was struck by the right front fender of the truck, bounced on top of the cab and landed some 30–40 feet away. After striking the girl, Bennett's truck left the scene and did not return. The girl suffered a broken collarbone and a fractured thigh bone.

■ Bennett first contends he was entitled to a directed verdict at the close of the evidence because there was no evidence that he was consciously aware of the risk of the girl darting into the street in front of the truck. Under § 565.060, a person commits the crime of assault in the second degree if he recklessly causes serious physical injury to another person. The jury was instructed in accordance with MAI–CR 2d 33.01, as follows:

"A person acts recklessly or is reckless when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross

deviation from the standard of care which a reasonable person would exercise in the situation."

That definition is contained in § 562.016.4. There can be no doubt that the evidence showed that in driving his truck down the narrow street while swerving back and forth at a speed of 35–40 mph, that Bennett's conduct constituted a gross deviation from the standards of that which a reasonable person would exercise in that situation. There were at least 20–75 people standing in the street with no sidewalk, and Bennett headed his truck directly toward a group of these people who were congregated near one of the doors to one of the bars. He had already struck a motorcycle parked in the street. The evidence is clear that he was acting out of either a sense of anger or frustration.

Certainly Bennett must have foreseen that in driving in this fashion people would be moving about and making every attempt to avoid being struck. While Bennett may not have foreseen that a young girl would chase a piece of paper into the street, certainly Bennett knew there were people present and it was entirely possible that for one reason or another one of those people might move in front of his truck. Bennett's precise argument is answered by the comments contained in the Model Penal Code (Proposed Official Draft 1962) § 2.03. It is stated there that when recklessly or negligently causing a particular result is an element of an offense, the element is established if the actual result involves the same kind of injury or harm as the probable result and is not too remote or accidental in its occurrence to have a bearing on the actor's liability or on the gravity of his offense.

There can be no doubt that the injury actually resulting in this case was the same kind of injury or harm as the probable result of Bennett's action in driving down the street in the manner and speed at which he drove. Nor is the actual result of striking the girl too remote or accidental in its occurrence to have any bearing on Bennett's liability. The injury to the girl resulted from the manner in which Bennett drove his truck down the street, which was certainly a gross deviation from the standard of care which a reasonable person would exercise in that situation. The court was correct in overruling the motion for a directed verdict.

■ Bennett next complains of the failure of the court to instruct the jury on the issue of causation. This argument was virtually identical to the one just considered. However, that may be, this complaint was not contained in the motion for new trial. More importantly, Bennett failed to offer an instruction along the lines of which he now complains. In *State v. Webb*, 423 S.W.2d 795, 797[1, 2] (Mo.1968) the court held that it is not error for the court to fail to give an instruction when such instruction was never offered. Since Bennett never offered an instruction on causation, it would not be error for the court to fail to give one. Nor was the failure to give such instruction such misdirection or failure to instruct as to cause manifest injustice. *State v. Bell*, 607 S.W.2d 796, 797[1–3] (Mo. App.1980). For that reason, there is no plain error.

Bennett contends the court erred in giving instructions to the jury concerning the punishment which they could assess because such instructions were misleading and in fact untruthful because they failed to inform the jury that the court could increase the punishment on a finding that Bennett was a persistent offender. This precise issue was decided against Johnson's contention in *State v. Johnson*, 615 S.W.2d 450 (Mo.App.1981).

Bennett finally contends the trial court unduly restricted the scope of his cross-examination of the 14-year old girl that was struck. Bennett's counsel informed the court that he desired to cross-examine the girl about her foster home placement, the reasons for such placement, her pregnancy and promiscuity. The court would not allow cross-examination on such subjects, but did allow counsel to cross-examine the girl with reference to her being in the tavern prior to being struck. The girl, in response

to such cross-examination, stated that she had been in the tavern and had consumed two "screwdrivers."

The cross-examination disallowed by the court falls under the category of a general attack on her credibility. While a juvenile may be cross-examined about matters which may be contained in juvenile records, if it probes the bias, prejudice or ulterior motive of the witness as they relate to the issues or persons in the cause on trial, cross-examination which constitutes only a general attack on the credibility of the witness is not permitted if it involves juvenile records. *State v. Tolliver*, 562 S.W.2d 714, 719 (Mo.App.1978). Here, the cross-examination sought and denied did pertain only to the general credibility of the juvenile. In that circumstance, it was not error to refuse to allow such cross-examination involving the girl's juvenile record.

The judgment is affirmed.

All concur.