**STATE of Missouri, Plaintiff–Respondent,**

v.

**Timothy A. ITEN, Defendant–Appellant.**

**No. 18114.**

Missouri Court of Appeals,
Southern District,
Division Two.

March 25, 1993.

Motion for Rehearing or to Transfer
Denied April 16, 1993.

Application to Transfer Denied
May 25, 1993.

Jeannie Arterburn, Rolla, for defendant-appellant.

John D. Beger, Pros. Atty., Patrick L. King, Asst. Pros. Atty., Phelps County, Rolla, for plaintiff-respondent.

FLANIGAN, Judge.

A jury found defendant Timothy Iten guilty of stealing, a Class A misdemeanor, and he was sentenced to one year imprisonment in the county jail and a fine. Defendant appeals.

Defendant's first point is that the evidence is insufficient to support the verdict, and the trial court erred in ruling otherwise because "the evidence was insufficient to establish the corpus delicti of the offense of stealing [in that] the state presented no proof that a VCR or Nintendo game set, owned by Wal–Mart, was taken or appropriated."

In addition to its formal portions, the information charged "that on or about August 10, 1989, in the County of Phelps, State of Missouri, the defendant appropriated an Emerson VCR and Nintendo game center of a value of at least one hundred fifty dollars, which said property was owned by Wal–Mart Store # 101, and defendant appropriated such property without the consent of Wal–Mart Store # 101, and with the purpose to deprive it thereof."

Defendant's challenge to the sufficiency of the evidence requires this court to determine whether there was sufficient evidence from which a reasonable juror might have found him guilty beyond a reasonable doubt. *State v. Dulany*, 781 S.W.2d 52, 55[2, 3] (Mo.banc 1989). We accept as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence, and disregard all evidence and inferences to the contrary. *Id.* This court considers any portions of defendant's evidence which would support a finding of guilty "because defendant, by putting on evidence, takes the chance of aiding

the State's case." *State v. Johnson*, 447 S.W.2d 285, 287[2] (Mo.1969).

█ The state's witnesses included Robert Blake, Gregory Hayes, Billy McDowell, and Lindel Stephens, all employees of the Wal–Mart store in Rolla. Their testimony included the following:

Robert Blake testified: On August 10, 1989, I was a sales clerk in the lawn and garden department, which is on the far south side of the store; most of the checkout counters are located near the main entrance; business was slow; I saw defendant hurrying, with a shopping cart, from the main part of the store into the lawn and garden department; he did not stop in the lawn and garden department; he was alone; there were three boxes in the shopping cart, a VCR, a Nintendo, and another box; Wal–Mart sold VCRs and Nintendos at that time; I told Gregory Hayes and Billy McDowell to come on because I assumed he was a shoplifter and I went after him; defendant ran across the parking lot and I ran after him; defendant ran up to the passenger's side of his pickup truck and tossed the three boxes into the back of the truck; I asked him if he had a receipt for the merchandise and he said that he did not but that his wife did; I asked him to come back in the store and find his wife so we could verify the purchases and he said, "no"; he said his wife had black hair and she was at the front of the store; I told Hayes to wait with defendant and I started toward the front of the store to see if there was a woman there with black hair; I was about half way to the store when defendant got into his truck and took off; I called the police and gave them the license number of the truck; defendant is the man I saw with the boxes; when a package is brought in the front door for an exchange, the door greeter puts a sheet of dots on each package; if a purchased item won't fit into a sack, a security tape is put on it with the person's initials and the date; there were no stickers or security tape on the boxes that defendant tossed into the back of the pickup.

Gregory Hayes testified: I followed Robert Blake out of the garden center after defendant; I saw him throw the stuff in the truck; the stuff consisted of an Emerson VCR, a Nintendo game, and a portable stereo, all items sold by Wal–Mart at that time; Robert asked defendant for his receipt; defendant said his wife had the receipt and that she was inside; Robert left to find the wife and told me to wait with the defendant; defendant said he couldn't wait and that he had to go in a hurry; defendant jumped in the truck, rolled up the window, locked the door and left.

Billy McDowell testified: When Robert Blake said, "There he goes," I told Blake to go out and check to make sure defendant had the receipt; Robert and Gregory went after the defendant, who was running at a real fast pace; defendant had a shopping cart with a VCR and a Nintendo; I called management and then went outside and saw defendant leave in the truck; I chased the defendant in my vehicle but did not catch him; I exceeded the speed limit.

Lindel Stephens testified: I am the store manager at Wal–Mart; we sold Emerson VCRs at a value of approximately $200 and Nintendo game centers at a price of about $100.

Police officer, Raymon Bogart, testified that he was called to the Wal–Mart store on August 10, 1989, and interviewed Hayes, McDowell, and Blake with regard to the foregoing events. They gave Bogart a description of defendant's vehicle and its license number.

Carol Ann Iten, defendant's wife and a defense witness, said she had been married to defendant since 1987 and that she was a blonde.

Defendant testified that he owned the pickup truck with the license number. He admitted being at the Wal–Mart store on the date charged. He testified that he went there to take a VCR to the electronics department. He said he had purchased the VCR in Alabama and had trouble with it. He said, "The only thing I had in the shopping cart to put in my truck was the VCR in its box." At another point in his testimony, defendant said, "I put the *boxes* in the back of the truck."

This court holds that the foregoing evidence was sufficient to support the verdict. Defendant's first point has no merit.

Defendant's second point is that the trial court erred in giving Instruction 4, based on MAI–CR.3d 302.04, in that the instruction erroneously defined "reasonable doubt." In *State v. Blankenship*, 830 S.W.2d 1, 13[14] (Mo.banc 1992), the court rejected the same contention and said that the instruction has been repeatedly upheld. Defendant's second point has no merit.

■ Defendant's third point is that the trial court erred in "denying defendant's motion for mistrial, after the time for defense counsel's closing argument was mistakenly reduced from twenty minutes to twelve minutes, due to the action of the trial court's time keeper in giving the three-minute warning approximately ten minutes early." The point further states that defendant was deprived of his right to a fair trial because "defendant was deprived of the opportunity to fully argue his case to the jury, prior to the jury's deliberation and finding of guilty, and the error, which resulted in the denial of defendant's right to closing argument, could only be corrected by granting a mistrial."

The transcript contains the closing argument of defendant's counsel. The argument commences on page 333. Near the bottom of page 337 the bailiff said, "Three minutes." Counsel continued to argue and concluded his remarks near the bottom of page 339. After the prosecutor completed his closing argument, the jury retired to deliberate. Two minutes later, the following occurred:

THE COURT: Let's go back on record. Let the record show that all parties reappear and the jury is outside of the room; defendant is appearing in person and that Mr. Swall has an objection and a request of the court.

MR. SWALL: Your Honor, with respect to my closing argument—when we were in chambers and I asked for twenty minutes, I understood I was to get a 3–minute warning for that. I inquired of the reporter here as to what time I, in fact, began my closing argument—she keeps a timepiece here. Your Honor, at 6:39 I began my closing argument. She also records when Mr. Beger started. Mr. Beger began his second half of his closing at 6:51.

Now that is only twelve minutes of argumentation. I did not even reach the 17–minute stage for which I had asked for a warning. And Mr. King gave me a warning—a 3–minute warning approximately ten minutes too soon.

And at this time, I would request—ask for a mistrial because I was not able to finish my closing I had prepared. When he gave me the three minutes, I had to close my argumentation.

THE COURT: How were you prejudiced, Mr. Swall? If this is the facts—and I'm not saying—how were you prejudiced?

MR. SWALL: Your Honor, I was prejudiced by the fact that I was not able to argue my case fully in front of the jury because I was not given the appropriate amount of time. Given the appropriate amount of time, I could have brought in other things and made other comparisons and distinctions. And because of the time I assumed the bailiff was giving me was correct—it was approximately ten minutes too soon—I basically gave half of my closing argument that I had prepared.

THE COURT: All right. I noticed that you had an easel up there—that you had a big legal pad, which was approximately—what is it—two by five or two by four?

MR. SWALL: Yes, Your Honor, and I also had a stack of—

THE COURT: Wait just a minute.

MR. SWALL: I'm sorry.

THE COURT: Let me finish. Two by five or two by four and from what I could see and understand from the bench, you went through every page of that. Is that correct?

MR. SWALL: That's true—I did go through every page. However, that was only part of my closing argument. I do have a set of pieces of paper with all kinds of things on them with respect to

my closing argument and was not able to consider any of those. In fact, I was at the beginning of my easel when I heard the 3–minute warning and at that time, I did proceed to rush through the rest of it so I could at least finish the easel, Your Honor.

THE COURT: All right. Let the record show that your request for mistrial is overruled.

.    .    .    .    .

THE COURT: However, I would like to point out and put it on the record so if this goes up on appeal, that the appellate courts are advised that after Mr. Swall sat down from his argument—and he states that he was short-changed on the amount of time—that Mr. Beger got up and used ten minutes—or approximately ten minutes for his closing argument and then he sat down and then the sheriff or bailiff was sworn by the clerk and handed the original instructions to be given to the jury to take into the jury room for their deliberation. That is was after the jury had left the room—after they had in hand the instructions and were in the jury room that the objection for a mistrial was stated to the court.

Anything further, Mr. Swall?

MR. SWALL: With respect to your ruling—no, Your Honor.

A trial court has broad discretion in setting the time allowed for closing argument. *State v. Brown*, 636 S.W.2d 929, 938 (Mo. banc 1982); *State v. Robinson*, 325 S.W.2d 465, 471[11] (Mo.1959). Defense counsel was not told by the court to end his argument. Defense counsel received the three-minute warning, which may have been premature. He made no request for additional time. Neither in the trial court nor in this court does defendant state what additional matters would have been argued if more time had been available. Defense counsel's request in the trial court was limited to a mistrial, a drastic remedy rarely justified.

This court has read the final argument of defense counsel. It was well presented and apparently complete. In view of the evidence from both sides, the argument made the best of a bad situation. This court holds that the trial court did not err in denying defendant's motion for a mistrial. Defendant's third point has no merit.

The judgment is affirmed.

MONTGOMERY, P.J., and PREWITT, J., concurs.